ANTHONY J WEIBELL, State Bar No. 238850
THOMAS R. WAKEFIELD, State Bar No. 330121
CARMEN SOBCZAK, State Bar No. 342569
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: aweibell@wsgr.com
       twakefield@wsgr.com
       csobczak@wsgr.com

*Attorneys for Defendant*
ROBLOX CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| V.R., <br><br> Plaintiff, <br><br> v. <br><br> ROBLOX CORPORATION, <br><br> Defendant. | Case No. 3:22-cv-02716-MMC <br><br> **DEFENDANT ROBLOX CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT** <br><br> Date: September 30, 2022 <br> Time: 9:00 A.M. <br> Judge: Hon. Maxine M. Chesney <br> Courtroom: 7, 19th Floor |

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................1

II. THE ACTION SHOULD BE DISMISSED UNDER RULE 12(B)(1) ................................1

    A.  Plaintiff Fails to Present a Ripe Controversy ............................................................1

    B.  The Act of Disaffirmance Does Not by Itself Create a Case or Controversy .........3

    C.  Plaintiff's Complaint Shows He Could Have Asked Roblox for a Refund ............4

    D.  Plaintiff Lacks Article III Standing for All His Claims ...........................................5

    E.  Plaintiff Lacks Standing to Seek Injunctive Relief ..................................................5

III. THE ACTION SHOULD BE DISMISSED UNDER RULE 12(B)(6) ...............................6

    A.  Plaintiff Fails to State a Claim for Declaratory Relief on Voidability ....................6

    B.  Plaintiff Fails to State a Claim for Declaratory Relief on Nullity ...........................7

    C.  Plaintiff Fails to State a Claim Under the UCL .......................................................9

        1.  Plaintiff Lacks Standing Under the UCL .....................................................9

        2.  Plaintiff's UCL Claims Fail for Lack of Reliance ...................................10

        3.  Plaintiff Has No Fraudulent UCL Claim ....................................................11

        4.  Plaintiff Has No Unlawful UCL Claim ......................................................11

        5.  Plaintiff Has No Unfair UCL Claim ...........................................................12

        6.  Plaintiff Has No Available Remedies Under the UCL .............................13

    D.  Plaintiff Fails to State a Claim for Unjust Enrichment .........................................13

IV. CONCLUSION ..................................................................................................................14

**TABLE OF AUTHORITIES**

**CASES**

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013) ..................................................................................................................2

*B.C. ex rel. Powers v. Plumas Unified Sch. Dist.*,
    192 F.3d 1260 (9th Cir. 1999)..................................................................................................6

*Baiul-Farina v. Lemire*,
    804 F. App'x 533 (9th Cir. 2020)...........................................................................................14

*Bruton v. Gerber Prods. Co.*,
    703 F. App'x 468 (9th Cir. 2017)...........................................................................................14

*C.M.D. v. Facebook, Inc.*,
    No. 12-1216-RS, 2014 U.S. Dist. Lexis 41371
    (N.D. Cal. Mar. 26, 2014),
    *aff'd*, 621 F. App'x 488 (9th Cir. 2015)..............................................................................7, 8

*City of Arcadia v. United States EPA*,
    265 F. Supp. 2d 1142 (N.D. Cal. 2003),
    *aff'd*, 411 F.3d 1103 (9th Cir. 2005) .......................................................................................9

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ...............................................................................................................2, 6

*Davis v. RiverSource Life Ins. Co.*,
    240 F. Supp. 3d 1011 (N.D. Cal. 2017) .................................................................................11

*Doe v. Epic Games, Inc.*,
    435 F. Supp. 3d 1024 (N.D. Cal. 2020) .................................................................3, 6, 10, 14

*Doe v. Roblox Corp.*,
    --- F. Supp. 3d ---, 2022 WL 1459568
    (N.D. Cal. May 9, 2022)............................................................................................10, 13, 14

*Edison v. United States*,
    822 F.3d 510 (9th Cir. 2016)....................................................................................................4

*Eliahu v. State of Israel*,
    No. 14-01636-BLF, 2015 U.S. Dist. LEXIS 26073
    (N.D. Cal. Mar. 3, 2015),
    *aff'd*, 659 F. App'x 451 (9th Cir. 2016) ..................................................................................5

*Genfit S. A. v. Cymabay Therapeutics Inc.*,
    No. 21-00395-MMC, 2022 U.S. Dist. LEXIS 11460
    (N.D. Cal. Jan. 21, 2022)........................................................................................................11

*Gill v. Whitford*, 138 S. Ct. 1916 (2018) .......................................................................................13

*Google LLC v. Sonos, Inc.*,
    No. 20-06754-WHA, 2022 U.S. Dist. LEXIS 11487
    (N.D. Cal. Jan. 21, 2022)..........................................................................................................8

*I.B. ex rel. Bohannon v. Facebook, Inc.*,
   82 F. Supp. 3d 1115 (N.D. Cal. 2015) ..................................................................................5

*I.B. ex rel. Fife v. Facebook, Inc.*,
   905 F. Supp. 2d 989 (N.D. Cal. 2012) .........................................................................3, 7, 8

*In re ConAgra Foods, Inc.*,
   908 F. Supp. 2d 1090 (C.D. Cal. 2012)...............................................................................14

*Jenkins v. Cnty. of Riverside*,
   398 F.3d 1093 (9th Cir. 2005)...............................................................................................9

*Kremen v. Cohen*,
   337 F.3d 1024 (9th Cir. 2003)...............................................................................................8

*Lewis v. Casey*,
   518 U.S. 343 (1996) ............................................................................................................13

*Moose Run, LLC v. Libric*,
   No. 19-01879-MMC, 2020 U.S. Dist. LEXIS 107077
   (N.D. Cal. June 18, 2020)....................................................................................................14

*Olsen v. Breeze, Inc.*,
   48 Cal. App. 4th 608 (1996)...........................................................................................4, 12

*Reeves v. Niantic, Inc.*,
   No. 21-05883-VC, 2022 WL 1769119
   (N.D. Cal. May 31, 2022).............................................................................3, 6, 10, 12, 13

*Robbins v. PlushCare, Inc.*,
   No. 21-03444-MMC, 2022 U.S. Dist. LEXIS 134401
   (N.D. Cal. July 28, 2022) ....................................................................................................14

*T.K. v. Adobe Sys., Inc.*,
   No. 17-04595-LHK, 2018 U.S. Dist. LEXIS 65557
   (N.D. Cal. Apr. 17, 2018).................................................................................................3, 6

*Trump v. New York*,
   141 S. Ct. 530 (2020) ...................................................................................................2, 3, 6

*Twitter, Inc. v. Paxton*,
   26 F.4th 1119 (9th Cir. 2022)................................................................................................2

*Underwood v. Mackay*,
   614 F. App'x 871 (9th Cir. 2015)..........................................................................................1

*United States v. Schlenker*,
   24 F.4th 1301 (9th Cir. 2022)................................................................................................6

*Waiserman v. Nat'l Union Fire Ins. Co.*,
   No. 14-00667, 2014 U.S. Dist. LEXIS 183642
   (C.D. Cal. Oct. 24, 2014) ......................................................................................................3

*Warth v. Seldin*,
   422 U.S. 490 (1975) ............................................................................................................12

*White v. Lee*,
　227 F.3d 1214 (9th Cir. 2000) ................................................................................................4

*Yeganeh v. Mayorkas*,
　No. 21-02426-EMC, 2021 U.S. Dist. LEXIS 212821
　(N.D. Cal. Nov. 3, 2021) ......................................................................................................11

**STATUTES**

Cal. Bus. & Prof. Code § 17204 ......................................................................................................10

Cal. Fam. Code § 6700 .....................................................................................................................7

Cal. Fam. Code § 6701(c) ........................................................................................................7, 8, 9

## I. INTRODUCTION

Plaintiff's Opposition to the Motion to Dismiss does its best to ignore the dispositive facts admitted in the Complaint: Roblox's Terms of Use ("TOU") explicitly permit refunds "as required by law," and Plaintiff read that language with his counsel prior to filing suit. Class Action Compl. ("Compl.") ¶¶ 21, 32 (ECF No. 1). Plaintiff also concedes that he never requested any refund based on his age and was never refused such a refund from Roblox. *See* Compl. ¶¶ 31, 49, 78. Indeed, Roblox does not controvert and has never controverted Plaintiff's right to a refund if requested based on his legal status as a minor. And Roblox has both *a policy and a practice* of permitting refunds in these circumstances. *See* Brown Decl. in Supp. Mot. Dismiss ("Brown Decl.") ¶¶ 7-8 (ECF No. 16-1).

These facts are dispositive because (1) there is no "case or controversy" under Article III where Plaintiff's right to the refund he wants is uncontroverted; and (2) as a matter of controlling California law, Roblox had no obligation to advertise and explain Plaintiff's legal rights to him, including whether Roblox would be "required by law" to grant any hypothetical refund request.

Recognizing his attempt to state a claim has misfired, Plaintiff's Opposition pivots to assert a new theory: that Roblox provided him with no "means" to request a refund, and he thus had no choice but to draft and file a declaratory judgment class action asking the Court to issue a declaration that he is entitled to a refund. Pl.'s Opp'n Mot. Dismiss ("Opp'n") at 5, 8, 10, 12 (ECF No. 21). Nonsense. Since the birth of the postal system, consumers have been readily able to mail a letter to a business to demand a refund and to explain the basis for the demand. In fact, the very TOU that Plaintiff reviewed with his counsel prior to filing suit provided express instructions on how to contact Roblox to make such a demand.

For these reasons, and those explained in Roblox's Motion to Dismiss, this action should be dismissed.

## II. THE ACTION SHOULD BE DISMISSED UNDER RULE 12(B)(1)

### A. Plaintiff Fails to Present a Ripe Controversy

Plaintiff cannot meet his "burden of proving that [his] claim is ripe," *Underwood v. Mackay*, 614 F. App'x 871, 872 (9th Cir. 2015), because he admits that the prospect of Roblox denying his

rights—a denial that would be contrary to Roblox's written terms and stated position—has not transpired and is purely conjectural.

The "ripeness requirement" exists "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Twitter, Inc. v. Paxton*, 26 F.4th 1119, 1122-23 (9th Cir. 2022). The Supreme Court has in recent years corrected several erroneous decisions by the lower courts that stepped over the limits of Article III of the Constitution, reaffirming that a "foundational principle of Article III is that 'an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation.'" *Trump v. New York*, 141 S. Ct. 530, 534 (2020) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90-91 (2013)). "Two related doctrines of justiciability—each originating in the case-or-controversy requirement of Article III—underlie this determination. First, a plaintiff must demonstrate standing, including 'an *injury* that is concrete, particularized, and *imminent rather than conjectural* or hypothetical.' Second, the case must be 'ripe'—*not dependent on 'contingent future events that may not occur* as anticipated, or indeed may not occur at all.'" *Id.* at 535 (emphasis added) (internal citations omitted).

Indeed, in *Trump*, the Supreme Court found that the case before it was "riddled with contingencies and speculation that impede judicial review" because "[a]ny prediction how the [defendant] might eventually implement [its] general statement of policy [was] 'no more than conjecture' at this time." *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983) (court lacked jurisdiction because "it is no more than conjecture to suggest that . . . the police will act unconstitutionally")).

So too here. It is no more than conjecture (and bad conjecture at that) that Roblox will act contrary to its written policy and stated position that Plaintiff should receive a refund of purchases he made as a minor where required by law. Plaintiff never requested a refund before filing suit, despite the fact that Roblox has both *a policy and a practice* of permitting refunds in these circumstances. *See* Brown Decl. ¶¶ 7-8. Under the stack of cases cited in Roblox's Motion (Mot. at 4-8), Plaintiff's case is not ripe because he has not yet suffered any injury-in-fact—a basic requirement of Article III. Plaintiff ignores these cases and turns to arguments that fail to demonstrate ripeness.

### B.   The Act of Disaffirmance Does Not by Itself Create a Case or Controversy

Plaintiff argues that "[t]he filing of an action is sufficient" to disaffirm a contract. Opp'n at 6. Roblox does not dispute this, but the mere filing of a complaint that disaffirms a contract does not *ipso facto* create a ripe dispute if the defendant, like Roblox, does not controvert and has never controverted the disaffirmance. The law of disaffirmance is not exempt from Article III's requirement of an actual case or controversy that is "not dependent on 'contingent future events that may not occur.'" *Trump*, 141 S. Ct. at 535. If a contract allows one party to terminate the contract for a refund and the other party has never contested the termination or the refund, there is no "controversy." As one court put it: "How could [plaintiff] know whether defendants would pay out his claim if he never submitted one? Therefore, [plaintiff] cannot satisfy Article III, which requires concrete, not speculative harm." *Waiserman v. Nat'l Union Fire Ins. Co.*, No. 14-00667, 2014 U.S. Dist. LEXIS 183642, at *6 (C.D. Cal. Oct. 24, 2014).

The cases cited by Plaintiff are readily distinguishable on this point because the defendants in those cases either contested the plaintiff's right to disaffirm, refused a refund, and/or had admitted policies that refused to allow refunds even when required by law. *See Reeves v. Niantic, Inc.*, No. 21-05883-VC, 2022 WL 1769119, at *1 (N.D. Cal. May 31, 2022) (defendant admittedly had a policy of not providing plaintiff's requested refund, arguing that any refund had to come from a third-party payment processor); *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 996, 1001 (N.D. Cal. 2012) (defendant disputed plaintiff's right to disaffirm and plaintiffs were not refunded in full despite request); *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1044 (N.D. Cal. 2020) ("defendant argues that plaintiff did not and cannot disaffirm contracts with defendant"); *T.K. v. Adobe Sys., Inc.*, No. 17-04595-LHK, 2018 U.S. Dist. LEXIS 65557, at *37 (N.D. Cal. Apr. 17, 2018) ("[defendant] initially refused to refund all of [plaintiff's] payments made under the renewal agreement and only did so after [plaintiff] filed this action").

Here by contrast, there is no controversy over disaffirmance or refund because (i) Roblox expressly states in its terms that refunds are allowed "as required by law," Compl. ¶¶ 21, 32; (ii) Roblox has affirmatively stated in its Motion that it does not controvert Plaintiff's right to a refund, Mot. at 6-8; (iii) Roblox has both *a policy and a practice* of permitting refunds in these

circumstances, Brown Decl. ¶¶ 7-8;[1] and (iv) Plaintiff concedes that he never requested any refund based on his age and was never refused such a refund from Roblox. *See* Compl. ¶¶ 31, 49, 78. Plaintiff only has to provide his information so Roblox knows how much to refund and to whom the refund is to go.

### C. Plaintiff's Complaint Shows He Could Have Asked Roblox for a Refund

Recognizing he is without a justiciable case, Plaintiff's Opposition pivots to assert a new theory: "Roblox provides no actual means for Plaintiff to request such a refund." Opp'n at 8; *see also id.* (claiming that there is no "means whatsoever for Plaintiff (or anybody else) to request a refund"). That is not just implausible, but objectively false. The very contract that Plaintiff claims to disaffirm, and which he allegedly pored over with counsel prior to filing suit (Compl. ¶¶ 28, 32), expressly instructs users how to contact Roblox with legal demands: "send notices to **Roblox Corporation, Legal Department, 970 Park Place, Suite 100, San Mateo, CA 94403**." Brown Decl. Ex. 1 ("TOU") § 16(a), (c) (bold in original). Indeed, since the birth of the postal system, consumers have been readily able to mail a letter to a business to demand a refund and to explain the basis for the demand. Given that Plaintiff was able to accomplish the much more difficult task of serving Roblox with a summons and complaint to initiate this class action lawsuit, he was surely capable of mailing a demand letter to Roblox to request a refund. Roblox also maintains an easy-to-use online contact form that could have been used by Plaintiff without having to mail anything: https://web.roblox.com/support.[2]

Although Plaintiff complains that he did not understand that he had a right to disaffirm and get a refund until he spoke with his counsel (Opp'n at 8; Compl. ¶¶ 28, 32), that argument is irrelevant. "[T]here is 'no general duty owed by one contracting party to another to explain the other's legal rights in connection with the agreement.'" Mot. at 15 (quoting *Olsen v. Breeze, Inc.*,

---

[1] In his Opposition, Plaintiff claims (without citing any authority) that Roblox's declaration is "inappropriate" to the extent that it "contradicts" allegations in his Complaint. Opp'n at 8 n.2. But the law is clear that, under Rule 12(b)(1), the Court need not presume the truthfulness of Plaintiff's allegations and may look beyond them. Mot. at 5 (citing *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).

[2] *See also* https://en.help.roblox.com/hc/en-us/articles/208448546-Contact-Us.

48 Cal. App. 4th 608, 622-23 (1996)). And he certainly could have asked for a refund after reading the contract with his counsel and before filing this lawsuit.

### D. Plaintiff Lacks Article III Standing for All His Claims

Contrary to Plaintiff's argument (Opp'n at 5-6), he lacks Article III standing for all of his claims, not just his claim for disaffirmance. Like Count I, Counts II-IV are all predicated on the same theory that Roblox has no right to keep Plaintiff's money if he wants it back, either because he can disaffirm Roblox's contractual right to keep his money (voidable contract) or Roblox never had a contractual right to withhold a requested refund to begin with (void contract). Compl. ¶¶ 63, 71-73, 89. It does not matter whether his contract is disaffirmed or void; in either case Plaintiff is saying Roblox has no present contractual right to keep his money. *Roblox agrees*. And in either case, providing such a refund "required by law" is consistent with Roblox's public written policy, internal policy, and practice. Brown Decl. ¶¶ 7-8.

At bottom, Plaintiff has only himself to blame for his supposed injury, and "[a] plaintiff cannot sustain Article III standing based on injuries that are self-inflicted." *Eliahu v. State of Israel*, No. 14-01636-BLF, 2015 U.S. Dist. LEXIS 26073, at *25 (N.D. Cal. Mar. 3, 2015), *aff'd*, 659 F. App'x 451 (9th Cir. 2016). He certainly could have, but has not yet, provided his information to Roblox to initiate the refund. The Court should not entertain his speculative lawsuit in the absence of Roblox's disagreement or refusal to provide a refund. Mot. at 4-8.

### E. Plaintiff Lacks Standing to Seek Injunctive Relief

Plaintiff mistakenly argues that he has standing to pursue injunctive relief even though he allegedly "no longer plays Roblox and will not play Roblox in the future." Compl. ¶ 9; Opp'n at 9-11. As Plaintiff's own cited authority confirms, his standing for injunctive relief depends on him showing a "real and immediate threat of repeated injury" such that there is a "sufficient likelihood that [he] will be wronged again in the same way" to have standing to seek injunctive relief. *I.B. ex rel. Bohannon v. Facebook, Inc.*, 82 F. Supp. 3d 1115, 1123 (N.D. Cal. 2015) (plaintiffs had standing to seek injunctive relief only because they "would again make purchases through Facebook if Defendant's alleged unlawful practices are corrected through the relief sought").

Here, Plaintiff's stated intention to "not play Roblox in the future" precludes a showing of *any* threat of repeated injury. Mot. at 8-9. In his Opposition, Plaintiff serves up pretzel logic, arguing that his "threatened injury is impending in that Defendant could continue to deprive Plaintiff of means to a refund, and thus continue to further harm Plaintiff." Opp'n at 10. Such a theory of standing is exactly the type of "conjectural" injury the Supreme Court has repeatedly rejected. *Trump*, 141 S. Ct. at 535 ("Any prediction how the [defendant] might eventually implement [its] general statement of policy [was] 'no more than conjecture' at this time."); *Los Angeles*, 461 U.S. at 108 ("it is no more than conjecture to suggest that . . . the police will act unconstitutionally"); *see also B.C. ex rel. Powers v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1269 (9th Cir. 1999) (dismissing claims for injunctive relief in full; "We affirm the district court's dismissal of [Plaintiff's] individual and class claims for injunctive relief for lack of standing[.]"); *T.K.*, 2018 U.S. Dist. LEXIS 65557, at *41 (same; "[Plaintiff] has failed to establish that she has Article III standing to assert injunctive relief claims.").

Again, Plaintiff's citations to *Epic Games* and *Reeves* are inapposite because the defendants in those cases argued that they were not obligated to provide the requested refund and would not be changing that position absent a court order. *Epic Games*, 435 F. Supp. 3d at 1044 ("defendant argues that plaintiff did not and cannot disaffirm contracts with defendant . . . Defendant therefore has indicated its unwillingness to honor plaintiff's disaffirmance and refund"); *Reeves*, 2022 WL 1769119, at *1 (defendant disputed its obligation and ability to refund plaintiff, arguing that only a third-party payment processor could provide the refund). But here, the opposite is true: Roblox has a *policy and a practice* of permitting refunds in these circumstances, Brown Decl. ¶¶ 7-8, and will refund Plaintiff as soon as it has Plaintiff's information.

For all the above reasons, the entire action should be dismissed under Rule 12(b)(1).

### III.   THE ACTION SHOULD BE DISMISSED UNDER RULE 12(B)(6)

#### A.   Plaintiff Fails to State a Claim for Declaratory Relief on Voidability

In addition to dismissal under Rule 12(b)(1), Plaintiff's claim for declaratory judgment that his contracts with Roblox are voidable should be dismissed under Rule 12(b)(6) for failure to state a claim. *United States v. Schlenker*, 24 F.4th 1301, 1306 (9th Cir. 2022) ("The 'actual controversy'

1  requirement [for the purposes of the Declaratory Judgment Act] is the same as the 'case or
2  controversy' requirement in Article III of the Constitution."). There is no controversy regarding
3  Plaintiff's right to disaffirm his contract with Roblox and to receive a refund for his purchases of
4  Robux. *See* Mot. at 5-8, 11. In opposition, Plaintiff reprises his arguments that he has "*already*
5  disaffirmed his contract with Roblox" and that he lacks "means to reasonably request a refund."
6  Opp'n at 12. Those arguments fail for the reasons explained above. *See supra* Sections II.B-II.C.

### B. Plaintiff Fails to State a Claim for Declaratory Relief on Nullity

Plaintiff also cannot state a claim for declaratory relief that his contracts with Roblox are void *ab initio* under California Family Code § 6701(c). The claim is moot because Roblox already agrees that in light of Plaintiff's demand for refund based on his age, Roblox has no contractual right to retain the money paid to it by Plaintiff. *See supra* Section II.D.

Even if the Court were to reach the merits of this claim, the claim must fail because the contracts at issue do not involve "personal property" not in Plaintiff's "immediate possession or control." Plaintiff's arguments to the contrary fail to treat Section 6701(c) as a "narrowly construed" exception to the general rule that "a minor may make a contract in the same manner as an adult, subject to the power of disaffirmance." Cal. Fam. Code § 6700; *C.M.D. v. Facebook, Inc.*, No. 12-1216-RS, 2014 U.S. Dist. Lexis 41371, at *8-9 (N.D. Cal. Mar. 26, 2014) ("*C.M.D. I*"), *aff'd*, 621 F. App'x 488 (9th Cir. 2015) ("*C.M.D. II*"). Ninth Circuit authority instructs that Section 6701(c) does not apply to intangible property like the Robux and virtual items at issue in this case. *C.M.D. II*, 621 F. App'x at 489 ("Section 6701(c) of the Family Code is meant to prevent minors from contracting away future rights."); *see also C.M.D. I*, 2014 U.S. Dist. LEXIS 41371, at *12 ("[T]he reference to property 'in the immediate possession' of the minor supports a conclusion that the section is primarily intended to address *tangible* personal property."). Plaintiff's attempt to distinguish *C.M.D.* (Opp'n at 13) fails. What mattered in *C.M.D.* was that the subject matter of the contract was an intangible right, not a future right, *see C.M.D. II*, 621 F. App'x at 489, and that is precisely the situation here.

Plaintiff also contends that *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989 (N.D. Cal. 2012) supports his claim. Opp'n at 15. It does not. For starters, *I.B.* is a district court decision that

1  predates the Ninth Circuit's holding in *C.M.D. II*. To the extent that *I.B.* is in tension with *C.M.D.*
2  *II*, the latter should be followed. The Opposition also omits key facts that distinguish *I.B.* from this
3  case. *I.B.* held that the minor plaintiffs' purchases of Facebook Credits were void under Section
4  6701(c) because the payment method—their *parents' money*—that they used to purchase Facebook
5  Credits was not in their possession or control. 905 F. Supp. 2d at 999-1000. Here, however, the
6  Section 6701(c) claim concerns Robux and virtual items that Plaintiff allegedly purchased *with his*
7  *own money*. Compl. ¶¶ 29-30. While Facebook also argued that purchases of Facebook Credits could
8  not amount to "personal property" for the purposes of Section 6701(c), *I.B.* did not resolve that
9  argument. *See* 905 F. Supp. 2d at 999-1000. It allowed the Section 6701(c) to survive dismissal
10 based solely on the payment method (the parents' money)—and not the thing purchased (Facebook
11 Credits). *See id.* The holding in *I.B.* thus does not bear on Plaintiff's 6701(c) claim.
12         Plaintiff is also wrong in arguing that the Robux and virtual items he purchased on the
13 Roblox Platform were not in his possession or control. Opp'n 13-14. As he concedes, the purchase
14 of Robux (with real money or gift card) simply grants him an intellectual property license to do
15 certain things on the Roblox Platform. Compl. ¶ 22. Likewise, the exchange of Robux for virtual
16 items grants him a license to use those virtual items on the Roblox Platform. Compl. ¶ 25. Plaintiff
17 cites no authority holding that contracts for licenses entered into by minors are void *ab initio* under
18 Section 6701(c) because the subject of the license was not in the minor's "immediate possession or
19 control." Nor could he. An intellectual property license, even a limited license like Robux, is always
20 in the "possession" or "control" of the holder.
21         Indeed, the Ninth Circuit has held in other contexts that intangible intellectual property rights
22 are possessed or controlled by the holder of those rights. *See, e.g.*, *Kremen v. Cohen*, 337 F.3d 1024,
23 1030-31 (9th Cir. 2003). In *Kremen*, the Ninth Circuit held that the licensed right to an internet
24 domain name was possessed by the plaintiff until the defendant (allegedly) wrongfully dispossessed
25 the plaintiff of that right and gave exclusive control of the domain to a third party. *Id.*; *see also*
26 *Google LLC v. Sonos, Inc.*, No. 20-06754-WHA, 2022 U.S. Dist. LEXIS 11487, at *13 (N.D. Cal.
27 Jan. 21, 2022) (collecting cases for the proposition that "intangible, intellectual property such as
28

trademarks, copyrights, source code, and the right to commercialize a patent," is possessed and controlled by the owner and thus subject to conversion by the defendant).

Because the intellectual property licenses at issue (Robux or virtual items) *were* in the possession and control of Plaintiff at all relevant times, those transactions are not void under Section 6701(c). Any declaratory judgment to the contrary would be at complete odds with the entire online industry of contracts that minors enter into every day, such as purchasing licenses to access e-books (e.g., Apple Books), online courses (e.g., Coursera), language-learning content (e.g., Duolingo), etc. The Court should thus reject Plaintiff's invitation to overturn existing law and destroy minors' ability to make such beneficial contracts if they choose to do so.

### C. Plaintiff Fails to State a Claim Under the UCL

Plaintiff offers a half-hearted defense of his UCL claim. The Opposition concedes that he has no claim under the UCL's "fraudulent" prong, leaving only his claims under the "unlawful" and "unfair" prongs. Opp'n at 18 n.5. He also fails to respond to several of the arguments in Roblox's Motion, and "the implication of this lack of response is that any opposition to this argument is waived." *City of Arcadia v. United States EPA*, 265 F. Supp. 2d 1142, 1154 n.16 (N.D. Cal. 2003), *aff'd*, 411 F.3d 1103 (9th Cir. 2005); *see also Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (opposing party waives arguments by not raising them in an opposition). The Court should dismiss Plaintiff's UCL claim because he (i) lacks UCL standing, (ii) has not alleged reliance, (iii) concedes he has no UCL fraud claim, (iv) fails to allege any unlawful conduct, (v) fails to allege any unfair conduct, and (vi) has no available remedies under the UCL.

#### 1. Plaintiff Lacks Standing Under the UCL

Plaintiff does not have standing to bring a UCL claim because he cannot allege that Roblox's alleged violation of the UCL *caused* him to lose money or property. Plaintiff premises his UCL claims on the alleged potential denial of disaffirmance and potential denial of refund. *See* Compl. ¶¶ 71-73; Opp'n at 16 (quoting Compl. ¶¶ 2, 20-21). But as discussed above, Roblox has not yet prohibited or denied Plaintiff a refund—and so has not *caused* him any loss of money or property. *See supra* Section II.D. In order to recover under the UCL, Plaintiff must have *already* "suffered

injury in fact and . . . lost money or property *as a result of* the unfair competition." Cal. Bus. & Prof. Code § 17204 (emphasis added). He has not.

Plaintiff acts as if this issue has already been decided in his favor in *Doe v. Roblox*, where the court held that the plaintiff had no obligation to "informally resolve her dispute before suing." Opp'n at 15 (quoting --- F. Supp. 3d ---, 2022 WL 1459568, at *6 (N.D. Cal. May 9, 2022)). But *Doe* resolved an entirely different issue. There, Roblox moved to dismiss on the ground that the plaintiff was contractually obligated to engage in an informal dispute resolution process before filing suit, and the court declined to enforce that contractual obligation against that plaintiff. The court *separately* held that the plaintiff had UCL standing because Roblox had *already* deleted items for which the plaintiff had paid money, and she lost that money or property. 2022 WL 1459568, at *5.

In contrast, here, Plaintiff can articulate no present, non-speculative loss of money or property *caused* by the alleged unfair acts of Roblox. Plaintiff cannot manufacture UCL standing based on his own decision not to exercise his alleged right to get a refund. And Plaintiff lacks UCL standing for another reason: he does not allege reliance on any alleged misrepresentation before he purchased Robux. *See* Mot. at 13-14; *infra* Section III.C.2.

### 2. Plaintiff's UCL Claims Fail for Lack of Reliance

As Roblox explained in its Motion (at 18-19), Plaintiff's UCL claims also fail for lack of reliance because he did not allege that he viewed and relied on any alleged misrepresentations *before* he purchased Robux. The Opposition does not meaningfully respond to that point. In other sections, Plaintiff points to boilerplate allegations regarding reliance. *See* Opp'n at 17 (quoting Compl. ¶ 78), 17 n.4 (quoting Compl. ¶ 34). But nowhere does he claim to have "relied on [any] allegedly misleading statement in [Roblox's] terms of service *at the time of the purchase*." *Reeves*, 2022 WL 1769119, at *1 (emphasis added) (dismissing UCL fraudulent claim on that basis).

While Plaintiff concedes dismissal of his UCL fraudulent claim (Opp'n at 18 n.5), he pretends that he can premise UCL unlawful and unfair claims on misrepresentations on which Plaintiff never relied. *See* Opp'n at 16 (as to unlawful UCL claim, arguing that "Defendant misleads or misrepresents the applicable law for transactions" and that "Defendant operates a non-refund policy that misleads, misrepresents, and does not acknowledge a minor's right to obtain a refund"

(quoting Compl. ¶ 19)); *id.* (as to unfair UCL claim, arguing that Plaintiff "suffered injury due to deceptive and misleading trade practices" (quoting Compl. ¶ 2)). But "a plaintiff also 'must establish reliance under the unlawful and unfair [UCL] prongs where, as here, the gravamen of the claim is based on alleged misrepresentation.'" *Davis v. RiverSource Life Ins. Co.*, 240 F. Supp. 3d 1011, 1017 (N.D. Cal. 2017).

Plaintiff does not even try to establish reliance for either his UCL unlawful or unfair prong. That provides an independent basis for dismissing what remains of his UCL claims. *Yeganeh v. Mayorkas*, No. 21-02426-EMC, 2021 U.S. Dist. LEXIS 212821, at *28 (N.D. Cal. Nov. 3, 2021) ("[G]iven Plaintiffs' failure to develop any arguments grounded in any legal authority in response to Defendants' 12(b)(6) motion, the Court finds that Plaintiffs have waived and abandoned all arguments in opposition to [Defendant's] motion.").

### 3.     Plaintiff Has No Fraudulent UCL Claim

Plaintiff's Opposition concedes that he has no claim under the UCL's "fraudulent" prong. Opp'n at 18 n.5.

### 4.     Plaintiff Has No Unlawful UCL Claim

Plaintiff's unlawful UCL claim depends on his claims for alleged violations of the California Family Code, which, as explained in the Motion and above, fail. *See* Mot. at 11-13; *supra* Sections III.A, III.B. Regardless of what the Family Code says about the enforceability of Plaintiff's contracts with Roblox, Roblox could not have violated the law because Roblox agrees with Plaintiff's assertion of his rights under the law to receive a refund. The only thing keeping Plaintiff from his refund is his own hide-the-ball tactics in refusing to provide his information to enable Roblox to identify him to give him what he says the law requires. Because Plaintiff has not adequately pleaded a violation of any underlying statute, his UCL unlawful claim fails. *Genfit S. A. v. Cymabay Therapeutics Inc.*, No. 21-00395-MMC, 2022 U.S. Dist. LEXIS 11460, at *20 (N.D. Cal. Jan. 21, 2022) (UCL unlawful claims are subject to dismissal if the claims on which they are based are dismissed).

### 5. Plaintiff Has No Unfair UCL Claim

Plaintiff's defense of his UCL unfair claim is similarly cryptic and fails because Plaintiff has not even allegedly been treated unfairly.[3]

As with his defense of the UCL unlawful claim, he quotes seemingly at random from the Complaint and relies on a conclusory passage from the decision in *Reeves* as if its holding self-evidently applies here. Opp'n at 16 (quoting *Reeves*, 2022 WL 1769119, at *1; Compl. ¶¶ 2, 20-21). It does not. In *Reeves*, the UCL unfair claim survived dismissal because despite the plaintiff's disaffirmance, the defendant had not refunded the plaintiff and admitted it would not do so under its policy that any refund would have to come from a third-party payment processor. *See* 2022 WL 1769119, at *1 ("the fact that Niantic does not directly control the issuance of refunds for purchases made on its app does not relieve it of liability to the extent it retains money that Reeves is entitled to recover"); *Reeves v Niantic, Inc.*, No. 3:21-05883-VC, ECF No. 28 at 18 (N.D. Cal. Jan. 14, 2022) (disputing obligation to pay refund, arguing "Niantic does not handle payment or refunds"). Unlike the defendant in *Reeves*, Roblox has an express policy and practice of giving refunds required by law like that requested by Plaintiff and will not deny him that refund.

Plaintiff also does not even bother to respond to Roblox's arguments that: (1) "there is nothing unfair about selling access to online content to minors with a published policy of allowing any disaffirmance 'required by law' and complying with that policy" (Mot. at 14); (2) Plaintiff's alleged harm was self-inflicted and does not outweigh the utility of Roblox maintaining a clear, succinct refund policy in its TOU (Mot. at 15); and (3) "there is 'no general duty owed by one contracting party to another to explain the other's legal rights in connection with the agreement'" (*id.* (quoting *Olsen v. Breeze, Inc.*, 48 Cal. App. 4th 608, 622-23 (1996)). All those arguments are conceded by Plaintiff's failure to respond to them.

---

[3] Again, it is axiomatic that Plaintiff must personally state a claim; he cannot rely on the putative class. *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent").

### 6. Plaintiff Has No Available Remedies Under the UCL

Plaintiff seeks an array of remedies under the UCL, none of which is available to him. He lacks standing to seek injunctive relief for the reasons explained above. *See supra* Section II.E. And he has no answer to the fact that disgorgement of profits is not a remedy under the UCL (*see* Mot. at 19), thus conceding that point. Regarding rescission, Plaintiff has already rescinded his contracts with Roblox by disaffirming them. Mot. at 17. He contends that he can maintain a request for rescission on behalf of a putative class, but he cannot rescind contracts that are not his to rescind. Absent class members would no doubt be furious and shocked if their Roblox accounts were suddenly terminated because Plaintiff was permitted to rescind millions of contracts on their behalf. "The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established. This is no less true with respect to class actions than with respect to other suits." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal citation omitted); *see also Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018) ("A plaintiff's remedy must be tailored to redress the plaintiff's particular injury.").

Finally, Plaintiff's insistence on his ability to seek restitution rehashes arguments that fall flat for reasons explained above. He again cites *Doe v. Roblox* for a claim that he was "not bound to attempt to informally resolve [his] dispute before suing," Opp'n at 17, but that case has no bearing on Plaintiff's claims, *see supra* Section III.C.1. Then, he cites *Reeves v. Niantic* for the misguided assertion that he "has not been refunded for his purchases despite his disaffirmation, and he is therefore entitled to restitution under California law," Opp'n at 17, once again eliding the fact that this is a situation entirely of his own making, *see supra* Section II.C. *Reeves* also involved a defendant who refused a refund on the ground that it could not process his refund request. *See* 2022 WL 1769119, at *1. Not so here, as Roblox will refund Plaintiff as soon as he provides his information. No judicial remedy is available or necessary.

### D. Plaintiff Fails to State a Claim for Unjust Enrichment

Like all his other claims, Plaintiff's unjust-enrichment claim should be dismissed. Roblox could not have been *unjustly* enriched by *Plaintiff's* own failure to ask for a refund prior to filing suit and *Plaintiff's* ongoing concealment of his information needed to process a refund. *See* Mot. at

18-19. In response, Plaintiff recites the two elements of an unjust-enrichment claim before concluding: "Plaintiff has pled both here." Opp'n at 18. Such a conclusory argument fails to show a plausible claim for relief. He offers no explanation, and the case he cites actually dismissed the unjust-enrichment claim because "under California law, a cause of action for unjust enrichment is not cognizable." *In re ConAgra Foods, Inc.*, 908 F. Supp. 2d 1090, 1114 (C.D. Cal. 2012).[4]

Indeed, the type of unjust enrichment claim asserted by Plaintiff is not cognizable under California law. While Plaintiff cites an unpublished Ninth Circuit decision for his argument that unjust enrichment can be pursued as a standalone cause of action (Opp'n at 18 (citing *Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017)), more recently, the Ninth Circuit held that "'[u]njust enrichment is not a cause of action' under California law." *Baiul-Farina v. Lemire*, 804 F. App'x 533, 537 (9th Cir. 2020). This Court has repeatedly held the same in recent years. *See, e.g.*, *Moose Run, LLC v. Libric*, No. 19-01879-MMC, 2020 U.S. Dist. LEXIS 107077, at *12 (N.D. Cal. June 18, 2020) (Chesney, J.). Moreover, the claim is also subject to dismissal because it is entirely duplicative of his other claims. Compl. ¶ 89 (explicitly premising unjust-enrichment claim on Counts I-III); *Robbins v. PlushCare, Inc.*, No. 21-03444-MMC, 2022 U.S. Dist. LEXIS 134401, at *4-5 (N.D. Cal. July 28, 2022) (Chesney, J.) (dismissing unjust-enrichment claim as duplicative of other claims); *Moose Run*, 2020 U.S. Dist. LEXIS 107077, at *12 (same).

## IV.   CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Respectfully submitted,

Dated: September 2, 2022

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/Anthony J Weibell*
        Anthony J Weibell

*Attorneys for Defendant*
ROBLOX CORPORATION

---

[4] Plaintiff's citation to *Doe v. Roblox* is once again entirely irrelevant. There, the court rejected Roblox's "narrow" argument regarding unjust enrichment given its finding that the plaintiff never assented to a contract with Roblox. 2022 WL 1459568, at *6. Plaintiff's Complaint presumes a contract, so *Doe* is not instructive here or elsewhere. *See supra* Sections II.C, III.C.6.